**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

FILED

97 OCT -8 AM 9: 39

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **JAMES and BRENDA BUTTERS**, | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ]   CV-97-N-0778-S |
| | ] |
| **AMERITAS VARIABLE LIFE** | ] |
| **INSURANCE CO.; MINNESOTA** | ] |
| **MUTUAL LIFE INSURANCE CO.;** | ] |
| **ALLIANZ LIFE INSURANCE CO.** | ] |
| **OF NORTH AMERICA;** | ] |
| **INDIANAPOLIS LIFE** | ] |
| **INSURANCE CO.; and RALPH D.** | ] |
| **McCALL, JR.**, | ] |
| | ] |
| Defendant(s). | ] |

ENTERED

OCT 8 1997

### Memorandum of Opinion

### I.   Introduction.

In this insurance fraud case, the plaintiffs, James and Brenda Butters (collectively, the "Butterses"), bring claims against the defendants, Ameritas Variable Life Insurance Co. ("Ameritas"), Minnesota Mutual Life Insurance Co. ("Minnesota Mutual"), Allianz Life Insurance Co. of North America ("Allianz"), Indianapolis Life Insurance Co. ("Indianapolis Life"), and Ralph D. McCall, Jr. ("McCall"), pursuant to Alabama law. Specifically, the plaintiffs contend that the defendants misrepresented the terms of certain policies of life insurance and bring three claims for: (1) fraud; (2) suppression and concealment; and (3) wrongful supervision. *Complaint* at 2-8.

This action was originally brought in the Circuit Court of Jefferson County, Alabama, and removed to this court on March 31, 1997. The defendants assert in their Joint Notice

36

of Removal that the life insurance policies issued by them and purchased by the plaintiffs, and that are the subject of the plaintiffs' claims against these defendants, were part of a benefits program of the plaintiffs' employer, and, as such, are subject to the "super preemption" provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). *Id.* at 2-3.

The action is presently before the court on the plaintiffs' motion to remand to state court. The motion has been fully briefed and, upon due consideration, will be denied.

## II.   **Allegations of the Complaint.**

The plaintiffs contend that defendant McCall, while acting as an agent of the insurer defendants, solicited and sold them certain variable life insurance policies. They are: (1) Ameritas policy number 2102138947 dated August 25, 1992, issued to James Butters; (2) Ameritas policy number 2102138948 dated July 25, 1992, issued to Brenda Butters; (3) Minnesota Mutual policy number 1-951-849V dated March 22, 1993, issued to James Butters; (4) Minnesota Mutual policy number 1-951-837V dated March 23, 1993, issued to Brenda Butters; (5) Allianz policy number 003500847 dated February 14, 1995, issued to James Butters; and (6) Allianz policy number 00350112 dated February 14, 1995, issued to Brenda Butters. *Complaint* at 4. The plaintiffs further aver that McCall also solicited and sold them Indianapolis Life whole life policy number 2185109 dated March 21, 1995, issued to James Butters, and term life policy number 2185110 dated March 21, 1995, issued to Brenda Butters. *Id.* The Butterses assert that McCall was at all times acting within the scope of his authority as an agent of the insurer defendants.

2

McCall purportedly made misrepresentations with respect to each of the above policies. Specifically, the Butterses claim he stated that "the premiums would vanish within a relatively short period," that they "represented an excellent, suitable investment" of the plaintiffs' annual premiums,[1] that they would "rapidly accumulate substantial cash value," and that "the investment return would be better than or comparable to other available investment vehicles" in providing for the plaintiffs' retirement. *Id.* at 5. The plaintiffs further allege McCall represented that each successive Minnesota Mutual and Allianz variable life policy was better than its predecessor with regard to investment opportunity, cash value, and vanishing premiums. *Id.* He purportedly told the plaintiffs that the Indianapolis Life whole life and term policies were better investment opportunities, and that with each successive policy issued, the plaintiffs would not lose the benefit of accumulated cash values and would improve their ability to build cash value. *Id.* at 5-6.

## III.   Discussion.

### A.   The Motion to Remand.

The removal statute, 28 U.S.C. § 1441 *et seq.*, must be strictly construed against removal, and any doubts should be resolved in favor of the remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). The general removal statute provides that:

> [e]xcept as otherwise expressly provided by act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

---

[1] The plaintiffs allege that the premiums totaled $7,000 annually, while their annual income is less than $40,000. *Complaint* at 5.

3

28 U.S.C. § 1441(a) (1997).

The defendants removed the action pursuant to 28 U.S.C. § 1441 based on their contention that the plaintiffs' Minnesota Mutual and Indianapolis Life policies are part of an employee benefit plan governed by ERISA and that, as these policies are the subject of the plaintiffs' claims against these two defendants, the court has original jurisdiction over the action. The plaintiffs assert, on the other hand, that the case should be remanded to the Circuit Court of Jefferson County, Alabama, because (1) the defendants have failed to provide sufficient evidence that an employee welfare benefit plan exists; (2) no employee welfare benefit plan does exist because there are no participants in the alleged plan; and (3) no plan was ever created or maintained by the plaintiffs, and, even if one had been created, it would not be preempted by ERISA because it meets the criteria of the safe harbor regulations. *Motion to Remand* at 1-2.

## B.  Subject Matter Jurisdiction Under ERISA.

The United States district courts have exclusive jurisdiction of civil actions brought under ERISA. *See* 29 U.S.C. § 1132(e)(1) (1997). In order for this case to be brought under ERISA, the life insurance at issue must qualify as part of "an employee benefit plan" within the meaning of 29 U.S.C. § 1002(1). That section defines an "employee benefit plan" as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services . . .

4

In *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982), the Eleventh Circuit construed § 3(1) of ERISA to include five elements that must be satisfied to create an "employee benefit plan." "[A] welfare plan requires (1) a 'plan, fund, or program' (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries." *Id.*

### 1.   **Plan, Fund, or Program.**

"Commentators and courts define 'plan, fund, or program' by synonym-arrangement, scheme, unitary scheme, program of action, method of putting into effect an intention or proposal, design - but do not specify the prerequisites of a 'plan, fund, or program.' At a minimum, however, a 'plan, fund, or program' under ERISA implies the existence of intended benefits, intended beneficiaries, a source of financing, and procedure to apply for and collect benefits." *Donovan*, 688 F.2d at 1372. Moreover, the Eleventh Circuit directs that "[i]n determining whether a plan, fund, or program (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and the procedure for receiving benefits." *Id.*

The plaintiffs argue, in part, that no plan, fund or program was established because the insurance policies in question did not meet the technical requirements of ERISA. *See Memorandum of Law in Support of Plaintiffs' Motion to Remand* at 7-10. To support their

5

argument, the plaintiffs assert that there exist "no 'plan' instruments or documents, no designated administrator and no summary reports as required under ERISA." *Id*. at 8. However, in *Donovan*, the Eleventh Circuit made clear that the failure to strictly adhere to the formal requirements of ERISA in this respect is not required for there to be an "employee welfare benefit plan" under ERISA. *See Donovan*, 688 F.2d at 1372 (stating that "a plan, fund or program *(pursuant to a writing or not)*" can be found to exist by a court) (emphasis added).

In an effort to challenge the Eleventh Circuit's standard, the plaintiffs cite to the court a reported decision from another court in this district, which took the position that a recent Supreme Court decision had implicitly overruled *Donovan* and held that a plan must be written to come within ERISA's scope. *See Memorandum of Law in Support of Plaintiffs' Motion to Remand* at 8-9 (citing *Hensley v. Philadelphia Life Ins. Co.*, 878 F. Supp. 1465, 1469 (N.D. Ala. 1995)). However, the Supreme Court case at issue was *Curtiss-Wright Corp. v. Schoonejongen*, 115 S. Ct. 1223 (1995), where the Court did not hold that a true ERISA-governed program must be in writing. *See Schoonejongen*, 115 S. Ct. at 1228. Instead, *Schoonejongen* stands for the proposition that ERISA does not create any substantive entitlement to employer-provided welfare benefits and that plan sponsors are "generally free under ERISA, for any reason to adopt, modify, or terminate welfare benefit plans." *Id.*

Until the Supreme Court or the Eleventh Circuit says otherwise, this court is thus bound to follow the standard set forth in *Donovan* to determine whether a "plan, fund or program" exists so as to preempt state law claims. As stated *supra*, under *Donovan*,

6

whether a plan, fund or program under ERISA exists is determined by the surrounding circumstances. While the existence of a written benefits plan offers substantial evidence that a plan, fund or program has been established, ERISA does not require a formal written plan. *Donovan*, 688 F.2d at 1372-73.

The evidence indicates that during the relevant time period, Contractors Roofing, Inc. ("CRI"), was a corporation wholly owned by plaintiff James Butters. *Deposition of James Butters* at 20. Apparently, in 1992 Mr. Butters on behalf of CRI inquired of defendant McCall about establishing a group health insurance plan for the employees at CRI. *Second Affidavit of Ralph D. McCall, Jr.* at ¶¶ 2-3. According to Mr. McCall, CRI completed and submitted a group application and established a group health insurance plan. *Id.* Mr. Butters then paid the initial premiums for CRI's participating employees out of CRI's corporate account. *Id.* at ¶ 4. At about this same time, Mr. Butters expressed an interest in providing other insurance coverage to CRI's employees, which included disability coverage. *Id.* at ¶ 3.

In late 1992, the evidence indicates that Mr. Butters contacted Mr. McCall about providing group long-term disability insurance benefits to some of CRI's employees, and that Mr. Butters completed and submitted an application to Provident Life and Accident Insurance Company. In addition to Mr. Butters, three employees, Charles Tubbs, Clarence Tinney and Lonnie Grimes, all participated in the Provident Plan at its inception. *Second McCall Affidavit* at ¶ 7. Other employees enrolled in the plan as they were hired. *Id.* CRI paid the premiums for the disability coverage from its corporate checking account. *Id.*

7

Shortly after CRI established the group health insurance plan for its employees, Mr. Butters inquired of Mr. McCall about setting up a retirement plan for Mr. and Mrs. Butters and several selected employees. *Id.* at ¶ 5. Mr. Butters arranged a private meeting concerning the program and recommended it to the selected employees. *Id* at ¶¶ 5, 8. Two employees, Clarence Tinney and Charles Tubbs, elected to participate and CRI paid the initial premium with a corporate check. *Id.* at ¶ 8. Apparently, the policies issued to these participants were retained by Mr. Butters and kept in CRI's office. *Id.* In early 1994, Mr. Butters arranged for coverage in all the insurance plans for another CRI employee, Donnie Gene Blackburn, and paid all premiums for this employee from the CRI corporate checking account. *Id.* at 10; *Affidavit of Donnie Gene Blackburn* at ¶¶ 1-6.

In May 1994, CRI canceled its existing group health insurance program and applied for a new group health policy from Complete Health under which it paid 100% of the initial premiums for its participants. *Second McCall Affidavit* at ¶ 11. The application indicates that six employees immediately enrolled for coverage. In late 1994, when the carrier providing the life insurance plan ceased doing business in Alabama, CRI switched coverage for this benefit to other carriers so this benefit could be continued. *Id.* at ¶ 12. After the switch, premiums for this coverage were paid from CRI's corporate checking account. *Id.*

The foregoing evidence, which remains uncontroverted by the plaintiffs' submissions to the court, strongly suggests that, under *Donovan*, Mr. Butters created a "plan, fund or program" sufficient to become an employee benefit plan under ERISA.

8

## 2.    Established or Maintained.

While no single act in itself necessarily constitutes the "establishment" of an ERISA plan, the Eleventh Circuit has ruled that a court may consider the "[a]cts or events that record, exemplify or implement the decision . . . [including] financing or arranging to finance or fund the intended benefits, establishing a procedure for disbursing benefits, [and] assuring employees that the plan or program exists." *Donovan*, 688 F.2d at 1373. The same evidence demonstrating the existence of a "plan, fund or program" supports a finding of the "establishment" of a benefits program by CRI.

As the defendants point out in their submissions to the court, CRI initiated the contact with Mr. McCall and identified the benefits it wished to provide to its employees. *See Defendants' Joint Brief in Opposition to Motion to Remand* at 16.  CRI, via Mr. Butters, completed and submitted group applications for health and disability insurance plans which covered its employees, and CRI paid the initial premiums for these coverages with checks written against CRI's corporate bank account and paid 100% of the premiums for the group health insurance after 1994. As to the life insurance policies specifically at issue in this case, CRI elected the cash value life program option, and selected the employees to whom the program would be made available. CRI--again, via Mr. Butters—initiated the meetings between Mr. McCall and the employees to whom this option was presented and, indeed, recommended the program to these employees. The evidence clearly shows that CRI took actions to implement a plan, fund or program; therefore, an ERISA employee benefit plan was "established and maintained." *Cf. Randol v. Mid-West Life Ins. Co. of Tennessee*, 987 F.2d 1547 (11th Cir. 1993) (finding that an ERISA plan had been "established

9

and maintained" when an employer wrote the first check purchasing the insurance policies, established a system whereby the premiums would be paid monthly by means of a bank draft on the corporate account, contributed $75 per employee per month toward the premiums, and collected the balance of the premiums through a withholding system).

### 3.   By an Employer.

The third requirement of an ERISA employee benefit plan is that the plan be established "by an employer or an employee organization or both." ERISA § 3(5) defines an employer as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." The evidence clearly shows that CRI, "acting directly as an employer," submitted employer applications to obtain insurance for its employees. Further, the corporation paid the initial premiums to establish coverage and continued to pay the premiums in most, if not all other, instances. Therefore, the court is satisfied that a plan, fund or program was established and maintained by an *employer*, Contractors Roofing, Inc.

### 4.   For the Purpose of Providing Certain Benefits.

ERISA § 3(1) states, in pertinent part, that an employee benefit plan is a plan "for the purpose of providing . . . through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." CRI provided its employees with health, life and disability insurance, benefits clearly covered by the statute.

10

## 5.    To Participants or their Beneficiaries.

The last requirement of an employee benefit plan is that the plan was promulgated to provide benefits to participants or their beneficiaries. ERISA defines the term "participant" as "any employee or former employee of an employer, . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . or whose beneficiaries may be eligible to receive such benefit." 29 U.S.C. § 1002(7) (1997). A "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(3)(8) (1997). ERISA defines an employee as "any individual employed by an employer." 29 U.S.C. § 1002(6) (1997). In *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318 (1992), the Supreme Court stated that the definition of an employee contained in the statute "is completely circular and explains nothing" and adopted the general common-law test of agency for determining who qualifies as an "employee" under ERISA.

Congress, likely aware that there were many gaps in the ERISA statutory scheme, authorized the Secretary of Labor to "prescribe such regulations as he [or she] finds necessary or appropriate to carry out the provisions of this subchapter." 29 U.S.C. § 1135 (1997). Thus, this court must determine whether the Department of Labor ("DOL") has addressed ERISA's ambiguities in this context and give deference to the agency's

11

conclusions.[2] The regulations provide that plans without employees are not considered employee benefit plans:

> (b) *Plans without employees.* For purposes of title I of the Act and this chapter, the term "employee benefit plan" shall not include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan, as defined in paragraph (d) of this section. For example, a so-called "Keogh" or "H.R. 10" plan under which only partners or only a sole proprietor are participants covered under the plan will not be covered under title I. However, a Keogh plan under which one or more common law employees, in addition to the self-employed individuals, are participants covered under the plan, will be covered under title I.

29 C.F.R. § 2510.3-3(b) (1997). The regulations further provide:

> (c) *Employees.* For purposes of this section:
>
> (1) An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse.
>
> (2) A partner in a partnership and his or her spouse shall not be deemed to be employees with respect to the partnership.

29 C.F.R. § 2510.3-3(c) (1997).

The plaintiffs contend that under these regulations, they cannot be deemed "participants" or "employees" for purposes of ERISA, thus negating the final prong of the *Donovan* analysis in finding that a benefit plan exists. *See Memorandum of Law in Support of Plaintiffs' Motion to Remand* at 5-7. They further argue that because Mr. Butters "wholly

---

[2] ERISA authorizes the Secretary of the Department of Labor to promulgate regulations that are necessary and appropriate to carry out the provisions of the Act. 29 U.S.C. § 1135 (1997). The regulations promulgated by the Department of Labor are a reasonable interpretation of ERISA. Therefore, according to *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n.11 & 844 (1984), "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id., see also Blessitt v. Retirement Plan For Employees of Dixie Engine Co.*, 848 F.2d 1164, 1167-68 (11th Cir. 1988); *Meredith v. Time Ins. Co.*, 980 F.2d 352, 356 (5th Cir. 1993).

owns" CRI, which is the "employer," neither he nor his wife can be an "employee" for ERISA purposes. *See* 29 C.F.R. § 2510.3-3(c)(1). According to the plaintiffs, then, the alleged plan is one "under which no employees are participants." *See* 29 C.F.R. § 2510.3-3(b). As a result, the plaintiffs argue, it does not constitute "an employee benefit plan." *See Meredith v. Time Ins. Co.*, 980 F.2d 352, 358 (5th Cir. 1993) (stating that an owner of a business is not an "employee" for purposes of deciding whether a benefit plan exists and concluding that a plan without "employees" is not regulated by ERISA).

The defendants assert, however, that the "plan" at issue in this case covers individuals, other than the plaintiffs, who *are* employees of CRI, thus bringing the insurance policies in question within the ambit of ERISA. *See Defendants' Joint Brief in Opposition to Motion to Remand* at 24-31; *see also* 29 C.F.R. § 2510.3-3(b) (1997) (stating that "a . . . plan under which one or more common law employees, in addition to the self-employed individuals, are participants covered under the plan, will be covered by [ERISA]").

The question before the court, then, is whether CRI established or maintained a plan "under which one or more common law employees" of CRI were participants covered under the plan. *See* 29 C.F.R. § 2510.3-3(b). To determine whether an individual has employee status, the Supreme Court set out the following factors to consider:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of

13

the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Darden*, 112 S. Ct. at 1348 (citing *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989)).

*Darden*, therefore, directs courts to apply common law principles in defining ERISA's terms such as "employee" and "employer." In their submissions to the court, the plaintiffs artfully characterize as "independent contractors" the individuals performing work for CRI. *See generally Memorandum of Law in Support of Motion to Remand.* However, notwithstanding the plaintiffs' semantic label and regardless of whether Mr. Butters or Mrs. Butters are deemed employees under ERISA, an application of the *Darden* test establishes that other individuals under the "plan" qualify as "employees." Mr. Butters testified that he controlled the hiring and firing of the crew leaders and employees for CRI. *James Butters Deposition* at 50; *see also Affidavit of Clarence W. Tinney* at ¶ 2 (stating that "[a]ll hiring and firing was done by Mr. Butters"). In fact, two crew leaders, Mr. Tinney and Mr. Blackburn, each testified that they were hired by Mr. Butters as employees of CRI and were paid directly by CRI. *Tinney Affidavit* at ¶ 2; *Blackburn Affidavit* at ¶ 2. Mr. Butters signed an employment verification form stating that Mr. Blackburn was an employee. Prospective employees of CRI were required to complete "employment applications." Mr. Butters also met with the crew leaders and employees each morning to discuss and assign the work on various projects.

CRI completed group insurance applications on which it represented itself to be the employer of the employees participating in the plans. In fact, on CRI's application for

14

short-term disability coverage with Provident Life and Accident Insurance Company, which was submitted with enrollment forms from ten "employees," Mr. Butters indicated that CRI's employees were not exempt from social security taxes. Moreover, CRI provided workers' compensation coverage to its employees although Alabama law does not require employers to provide workers' compensation coverage to independent contractors. *See Birmingham Post Co. v. Sturgeon*, 149 So. 74, 76 (Ala. 1933) (holding that Alabama's workers' compensation law "does not apply where the injured person is an independent contractor, and the relation of employer and employee does not exist"); *James Butters Deposition* at 37-38. CRI has processed workers' compensation claims and has filed documents with the Alabama Department of Industrial Relations and the Circuit Court of Shelby County, Alabama, admitting that its workers are "employees" of CRI. *See James Butters Deposition* at 73-78. Certainly, all of these facts demonstrate that CRI had "employees" within the meaning and scope of ERISA.

The next step is to determine whether any one of these employees was also a "participant" covered under the plan. *See* 29 C.F.R. § 2510.3-3(b). Without question, CRI's comprehensive benefits program had "employee" participants other than Mr. Butters and Mrs. Butters.[3] The plaintiffs' submissions to the court focus solely on the life insurance policies in question, seemingly asking the court to consider these insurance policies

---

[3] The evidence indicates the following: Massey, Pittman, Tubbs, Jernigan, Grimes, Mannick, Hippo, Cato, Loyed, Mathis, J. Roberts, J. Sexton, T. Roberts, T. Sexton and Tinney all participated in the group health plan with The Mutual Group; Tinney, Tubbs, Grimes, Shipp and Hippo all participated in the long-term disability plan; T. Sexton, Cato, Mannick, J. Roberts, Mathis, Hippo, Shipp, Loyed, J. Sexton, and D. Cato all participated in the short-term disability plan; Tinney, Tubbs and Blackburn participated in the variable life insurance program; Mathis, J. Sexton, Howell, Szretter, Blackburn and J. Roberts all participated in the group health plan after it was transferred from Mutual Group to Complete Health.

15

separately from the overall benefits program for ERISA purposes. However, even if the court were to conclude that the life insurance policies should be considered separately from the overall benefits program, these policies nevertheless fall within ERISA's broad scope because, using the *Darden* analysis, CRI had common law employees participating in this life insurance program as well as its other programs.

The evidence indicates Mr. Butters decided to establish a retirement program in 1992. In late 1992, a cash value life insurance program with Minnesota Mutual was established for Mr. Butters and Mrs. Butters. These policies were paid for by CRI. After this variable life insurance program with Minnesota Mutual was in place, CRI offered this program to Mr. Tinney and Mr. Tubbs. Although Mr. Butters claims that he deducted the premium amounts from their pay, no records have been produced by the plaintiffs supporting this assertion. In fact, corporate records which address the pay and benefits of Mr. Tubbs and Mr. Tinney indicate that these premiums were not deducted from their pay.

In 1994, the evidence reflects that Mr. Butters decided to provide the Minnesota Mutual variable life insurance program to Mr. Blackburn. Mr. Blackburn was denied coverage by Minnesota Mutual and, as a result, a similar program was arranged for him with Allianz Life. CRI paid all the premiums for this program for Mr. Blackburn. *Blackburn Affidavit* at ¶¶ 5-6. And, when Minnesota Mutual ceased doing business in Alabama, CRI switched the coverage for Mr. and Mrs. Butters to Allianz Life where Mr. Blackburn's program was maintained. *Second McCall Affidavit* at ¶ 12. Against this background, it is clear to the court that a common law employee of CRI (other than the plaintiffs)

16

participated in both the Minnesota Mutual variable life insurance program *and* the Allianz Life variable life insurance program. The fact that the respective life insurance plans were maintained through different providers for certain periods of time does not require a different conclusion. *See Madonia v. Blue Cross & Blue Shield of Virginia*, 11 F.3d 444, 447-48 (4th Cir. 1993) (holding that an employee is a "participant" in an ERISA plan when the employee obtains insurance coverage through a different carrier than that of the sole shareholder/employer, and the employer assisted the employee in financing the coverage); *see also Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 408 (9th Cir. 1995) (holding that an insurance plan that originally covered a non-partner employee is governed by ERISA because it was "*established* or maintained by an employer . . . for the purpose of providing [medical insurance] for its participants or their beneficiaries") (emphasis in original).

In sum, the court finds immaterial the issue whether Mr. Butters and Mrs. Butters are considered "participants" for purposes of determining the existence of an ERISA-governed employee welfare benefits plan.[4] The overall benefits scheme established by CRI clearly included common law employee participants and, considered separately, the variable life insurance program established by CRI included common law employee participants other

---

[4] As an alternative argument, the defendants suggest that, despite the Department of Labor's anti-inurement provision, a "sole shareholder has standing to assert claims under ERISA." *Supplement to Defendants' Joint Brief in Opposition to the Plaintiffs' Motion to Remand* at 2. The defendants point to a recent Eleventh Circuit decision, *Morstein v. National Ins. Servcs.*, 93 F.3d 715 (11th Cir. 1996) (en banc), and argue that *Morstein* "held that '[a sole shareholder] *is a plan beneficiary* . . .'." *See Supplement* at 1-2 (emphasis in original). A careful reading of *Morstein*, however, plainly reveals that the Eleventh Circuit did not deal with the question. While the Eleventh Circuit in *Morstein* may have assumed in its analysis that a sole shareholder can also be a beneficiary for ERISA purposes, it did not so hold. Until given clearer directions, this court is not prepared to act in contravention of the DOL regulations. *See* 29 C.F.R. § 2510.3-3(b).

than Mr. and Mrs. Butters. *See Darden*, 112 S. Ct. at 1348. Thus, the fifth and final

requirement for an ERISA employee benefit plan has been established.

### C.    ERISA's "Safe Harbor."

The plaintiffs argue that, even if the court finds that an employee welfare benefit plan

exists, the so-called "safe harbor" regulations promulgated by the Department of Labor

exclude their insurance policies from ERISA's scope. *See Memorandum of Law in Support

of Plaintiffs' Motion to Remand* at 10-11. The "safe harbor" regulations provide in part:

> For purposes of Title I of the Act and this chapter, the terms "employee
> welfare benefit plan" and "welfare plan" shall not include a group or group-
> type insurance program offered by an insurer to employees or members of
> an employee organization, under which
>
> (1)    No contributions are made by an employer or employee organization;
> (2)    Participation in the program is completely voluntary for employees or
>        members;
> (3)    The sole functions of the employer or employee organization with
>        respect to the program are, without endorsing the program, to permit
>        the insurer to publicize the program to employees or members, to
>        collect premiums through payroll deductions or dues checkoffs and
>        to remit them to the insurer; and
> (4)    The employer or employee organization receives no consideration in
>        the form of cash or otherwise in connection with the program, other
>        than reasonable compensation, excluding any profit, for administrative
>        services actually rendered in connection with payroll deductions or
>        dues checkoffs.

29 C.F.R. § 2510-3.1(j). Each of these four requirements must be met in order for the plan

to be excepted from ERISA.

The plaintiffs contend the first requirement is satisfied because "they made no

contributions to the policies purchased by any of the independent contractors working for

[CRI]." *Memorandum of Law in Support of Plaintiffs' Motion to Remand* at 10. However,

18

it is undisputed that CRI paid at least some--if not all--of the premiums for the life insurance policies of Mr. Butters, Mrs. Butters, Mr. Tinney, Mr. Tubbs and Mr. Blackburn. And, although Mr. Butters testified that "[i]f any of the premiums for the policies purchased . . . were paid by checks from the [CRI] checking account, the premium would be deducted from the amount due that [individual]," no credible evidence has been produced by the plaintiffs that any such deductions ever took place. *See Affidavit of James Butters* at ¶ 7; *Affidavit of Donnie Gene Blackburn* at ¶¶ 3, 5, & 6.

The defendants do not dispute that the second and fourth requirement have been met. The defendants contend, however, that the third requirement has not been met because CRI endorsed the life insurance program to the employees who were selected by CRI to participate. *See Defendants' Joint Brief in Opposition to Motion to Remand* at 19. The evidence indicates that Mr. Butters telephoned Mr. McCall and informed Mr. McCall that CRI wanted to offer the variable life insurance program to selected employees. *Second McCall Affidavit* at ¶ 5. Mr. Butters then arranged a special meeting between himself, Mr. McCall and the selected employees in the office of CRI. *Id.* at ¶ 8. Mr. Butters informed the selected employees that the life insurance program was a good one, that he had the program himself, and that they, too, should participate in the program. *Tinney Affidavit* at ¶ 4. CRI then paid the initial premium and, arguably, the subsequent premiums for the policies of Mr. Tinney and Mr. Tubbs. Later, Mr. Butters did the same for Mr. Blackburn.

Based on the foregoing evidence, this court finds that CRI endorsed the life insurance program to its employees, which takes the policies at issue in this case out of

19

ERISA's "safe harbor" and establishes that this court has jurisdiction of this action pursuant

to 29 U.S.C. § 1132(e)(1) (1997). *See DOL Advisory Op. 94-25A, July 11, 1994* (quoted in

*Connecticut Gen'l Life Ins. Co. v. Mitchell*, No. 94 CIV. 4648(LAP), 1995 WL 469714

(S.D.N.Y. Aug. 8, 1995)) (stating that "[a]n endorsement within the meaning of section

2510.3-1(j)(3) occurs if the employer or employee organization urges or encourages

employee or member participation in the program or engages in activities that would lead

an employee or member reasonably to conclude that the program is part of a benefit

organization arrangement established or maintained by the employer or employee

organization"); *see also Cockey v. Life Ins. Co. of N. Am.*, 804 F. Supp. 1571, 1575 (S.D. Ga.

1992) (stating that "[w]here a plan is presented to employees as one belonging to the

employer's benefits package, as opposed to merely permitting the insurer to publicize the

program to employees, the plan is an 'employee welfare benefit plan' under ERISA . . . even

though the employees pay the premiums").

### D.    Preemption of Plaintiffs' Claims Against Mr. McCall.

The plaintiffs argue that the state law claims asserted against Mr. McCall are not

subject to ERISA preemption under the Eleventh Circuit's *en banc* decision in *Morstein v.*

*National Ins. Servcs.*, 93 F.3d 715 (11th Cir. 1996) (en banc).  In *Morstein*, the Eleventh

Circuit partially overruled its decision in *Belasco v. W.K.P. Wilson & Sons, Inc.*, 833 F.2d 277

(11th Cir. 1987), which had extended ERISA's preemption doctrine to claims against

insurance agents marketing ERISA plans. In *Morstein*, the Eleventh Circuit concluded that

state law claims alleging fraud and negligence in the sales of an employee benefits plan

brought against an insurance broker and the broker's employer, an independent insurance

20

sales agency, were not preempted by ERISA. *See Morstein*, 93 F.3d at 716. The court's conclusion hinged on the status of the defendants--the broker and the independent insurance agency--as non-ERISA entities. *See id.* at 716. The court identified the ERISA entities as "the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan." *Id.* at 722. The court held that state law claims brought against non-ERISA entities are not preempted by ERISA when they do not affect relations among principal ERISA entities. *See id.*

Reading *Morstein* in the context of its facts, it appears that the Eleventh Circuit's determination that the independent insurance brokerage and its agent were not ERISA entities was based on the fact that, under Georgia law, independent agencies are generally considered agents of the *insured*, not the insurer. *Morstein*, 93 F.3d at 717 & n.2. This is true even though the brokerage and its agent were authorized to write policies for the ERISA plan insurance companies. *See id.* Here, however, the plaintiffs' claims of liability with respect to the insurance company defendants is that Mr. McCall was "the agent of Defendant Insurance Companies who committed wrongs against the Butters." *Memorandum of Law in Support of Plaintiffs' Motion to Remand* at 1; *see also Complaint* at ¶ 15 (alleging that "Defendant McCall acted within the scope of his authority as an agent of the insurer defendants . . . and his wrongful actions are imputable to, and the insurer defendants are responsible and liable for, said wrongful actions"). In other words, the plaintiffs' claims in this action are based entirely upon their assertion that Mr. McCall was acting not as their agent but, instead, as the agent for the defendant insurance companies. Thus, the plaintiffs' theory of liability brings their claims against Mr. McCall outside the

21

*Morstein* analysis. Other courts have distinguished *Morstein* under similar facts. *See, e.g., Culpepper v. Protective Life Ins. Co.* , 938 F. Supp. 794, 801 (M.D. Ala. 1996) (holding that *Morstein* does not apply when "the Plaintiff asserts claims against the insurance company itself and agents of the insurance company" because such "Defendants clearly qualify as 'ERISA entities'"). As a result, the court finds that this court has jurisdiction of plaintiffs' claims against Mr. McCall pursuant to 29 U.S.C. § 1132(e)(1) (1997).

## IV.    Conclusion.

This court is satisfied that this case was properly removed to this court pursuant to 28 U.S.C. § 1441 *et seq* (1997). Further, the court is satisfied that the plaintiffs' claims against all the defendants named in this case arise under ERISA. The court has jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) (1997). ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ." 29 U.S.C. § 1144(a) (1997). The Supreme Court has broadly interpreted the "relate to" language of section 1144(a) as encompassing any state law that has a "connection with or reference to" employee benefit plans. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983). Because the plaintiffs' state law claims for common law fraud, suppression and concealment, and wrongful supervision arise out of negotiations for the sale of an ERISA plan, the plaintiffs' claims "relate to" an ERISA plan. Therefore, the plaintiffs' state law claims are preempted. Accordingly, the plaintiffs' motion to remand will be **DENIED.** The plaintiffs will be allowed fifteen (15) days in which to amend their complaint to state any applicable federal claims that may be available to them. If no amendment has been filed within the allowed period, the action will be dismissed.

Done, this  8ᵗʰ  of  October, 1997.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE